George W. Hamilton and Evelyn Hamilton v. Commissioner.
Hamilton v. Commissioner
Docket No. 43392.
United States Tax Court
T.C. Memo 1954-72; 1954 Tax Ct. Memo LEXIS 174; 13 T.C.M. (CCH) 560; T.C.M. (RIA) 54178; June 21, 1954, Filed George W. Hamilton, 10704 Durand Avenue, N.E., Seattle, Wash., pro se. Francis J. Butler, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in the income tax of petitioners for the year 1948 in the amount of $182.12. The sole question involves the extent to which petitioners' automobile expenses are covered by section 22 (n). Findings of Fact Petitioners are husband and wife who reside in Seattle, Washington. They filed original and amended joint income tax returns for the calendar year 1948 with the collector of internal revenue for the district of Washington. These returns differed only in the amount of tax withheld. Upon both the original and amended returns, petitioners claimed total automobile *175 expenses of $637.50, and upon attached schedules of automobile expenses, they stated the occupation of George W. Hamilton, hereinafter referred to as petitioner, to be that of a salesman. Petitioner sells rugs or carpets on a commission basis for Tourtellotte Bradley, Inc., hereinafter sometimes referred to as Tourtellotte or the corporation. He has been in that business since July 1933, when he first contacted Neil E. Tourtellotte, president and sole stockholder of Tourtellotte Bradley, Inc. In January 1945, Tourtellotte wrote to petitioner as follows: "In regard to our recent conversations regarding compensation for the coming years: "You are elected Vice President of Tourtellotte Bradley, Inc., effective this date. "All carpet sales are to be in your department. On such sales made by you personally your commission is to be 40% of the 'gross profit.' On sales of other types of materials commission shall be 33 1/3% of the gross profit. On sales made by other salesmen of carpet you are to have an over-riding commission of 6 2/3% with 33 1/3% to the actual salesman. This arrangement to start as of this date. "Gross profit is to be defined as the difference between the selling *176 price and cost, such cost to be costs of all material used, not including cash discounts or volume refunds, plus labor at actual cost plus an additional 15% added to said labor cost for supervisory and insurance costs, and any other costs such as cartage, which is to be calculated at 10" a mile on all trips with a minimum charge of $1.00. "Commissions less drawing account and any other expenses are to be paid every three months on the next 10th of the month following such period or as soon thereafter as such amount of commission is determinable on all work completed and invoiced. "In regard to bad debts, no commission is to be paid naturally on such and 10% of the net cost of said bad debt is to be charged back to you. "As you know, Tourtellotte Bradley, Inc. plans to add salesmen to the present force and it is agreed that the management of Tourtellotte Bradley, Inc. can assign sale rights for all other floor coverings except carpet to such new salesmen as it deems fit. "Drawing account to be based on 60% of the previous period commission income and to be paid semi-monthly. "This agreement subject to revision January 1 of each succeeding year." This arrangement represents *177 substantially the same agreement that has existed between petitioner and Tourtellotte throughout the years. Petitioner does not own stock in the corporation. Tourtellotte felt that it added to petitioner's prestige to make him vice president. Petitioner's contacts consist primarily of past business and personal acquaintances. When petitioner extends credit he normally does not discuss that with Tourtellotte unless it is an unusual situation and petitioner does not know much about the person requesting the credit. Petitioner makes estimates on carpeting jobs and the work is then done by employees of Tourtellotte. Petitioner has no control over these employees and could not fire them. He can make suggestions to the employees but in the event these suggestions are not carried out, there is nothing that petitioner can do. Petitioner's office expenses are paid by Tourtellotte. Petitioner has no overhead except for certain car and garage business. Petitioner has no specific office hours. From time to time he has discussions with the corporation's president. The corporation takes out insurance on its employees and in addition carries a "floater" policy for the people who are out soliciting *178 work. If they had an automobile accident and the corporation was sued the corporation is covered by this policy. Petitioner is covered by the "floater" policy. The corporation has other salesmen, varying in number, who perform similar services. During the taxable year in question, petitioner did not work for anyone else except Tourtellotte Bradley, Inc. On his 1948 income tax return petitioner reported wages from "Tourtellotte Corporation" and attached a withholding statement. He took the optional standard deduction and also reported a loss of $300.40 computed under Schedule E as follows: SCHEDULE E. - INCOME FROM PARTNERSHIPS, ESTATES AND TRUSTS, AND OTHER SOURCES. 1. * * * Car allowance
$337.20
2. * * * Less Car expense per
schedule
3. * * * "Travel Expense"
637.60
4. Total (Loss)
[300.40)
Respondent disallowed the separate car expense deduction with this explanation: "* * * since none of such expense was incurred 'away from home,' it is not deductible in determining your adjusted gross income within the meaning of Section 22 (n) of the Internal Revenue Code, and is deductible only under the provisions of Section 23 (a) *179 in determining your net income. Inasmuch as you have elected to use the optional standard deduction, no part of the 'travel expense' claimed on your return has been allowed. Therefore, your total gross receipts have been increased by the amount of $337.20, and excess travel expense in the amount of $300.40 has been eliminated from deductions from other income in determining your adjusted gross income, a total increase of $637.60." Petitioner is an employee of the corporation. Not all of the automobile expenses incurred by him in connection with this employment are deductible in arriving at adjusted gross income but $337.20 of those expenses which were reimbursed by the corporation is deductible. Opinion The question of whether the automobile expenses are attributable to "the performance of services by the taxpayer as an employee" [1] is "primarily a question of fact." Chester C. Hand, Sr., 16 T.C. 1410, 1414. Irene L. Bell, 13 T.C. 344, and Raymond E. Kershner, 14 T.C. 168, are the two leading cases which provide the framework for our discussion. *180 Petitioner was vice president of the corporation. All carpet sales were to be in his department. His remuneration was based not only on sales made by him personally but also upon sales made by other salesmen in the department. The corporation paid his office overhead and gave him a car allowance. That the corporation regarded petitioner as an employee is shown by the fact that it took out liability insurance to cover him and withheld part of his wages, If there was any absence of close supervision it is understandable since petitioner "stands high in the company's hierarchy." Snyder v. Scofield, (S.D., Tex.) 115 Fed. Supp. 356. We conclude that the present case is more similar to Raymond E. Kershner, supra, than it is to Irene L. Bell, supra, and have accordingly made the ultimate finding that petitioner's relationship to the corporation was that of an employee. Even an employee, however, need not include in "adjusted gross income" the amount of reimbursed expenses. [2] As we understand the record, some $337.20 fell into this category. To this extent it appears that petitioner erred in reporting the amount as income and respondent should *181 not have employed it in computing the deficiency. Decision will be entered under Rule 50. Footnotes
1. SEC. 22. GROSS INCOME. * * *
(n) Definition of "Adjusted Gross Income." - As used in this chapter the term "adjusted gross income" means the gross income minus - (1) Trade and Business Deductions. - The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee;↩
2. SEC. 22. GROSS INCOME. * * *
(n) Definition of "Adjusted Gross Income." - As used in this chapter the term "adjusted gross income" means the gross income minus - * * *
(3) Reimbursed Expenses in Connection with Employment. - The deductions allowed by section 23 (other than expenses of travel, meals, and lodging while away from home) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer;↩